McKinney, J.
delivered the opinion of the court.
This was an action of ejectment, brought in the circuit *314 court of Lincoln, for a tract of land of six hundred and thirty - seven acres, lying in said county.
The lessors of the plaintiff are the heirs at law of Samuel Vance, deceased, through whom they claim title to the land described in the declaration: and the defendants are the heirs at law of Nicholas G. Ridgley, deceased, under whom they derive their claim to said land.
On the trial in the Circuit court, the lessors of the plaintiff produced and read a grant from the State of North Carolina to David Vance, William Moore and Daniel Williams, for five thousand acres of land, dated 19ch November, 1800; which grant includes the land sued for in this action; also a paper, purporting to be a deed of relinquishment from Moore and Williams to David Vance, for six hundred and twenty acres of land, embraced in said grant, and covering the land sued for, dated 15th June, 1807; also a copy of a paper purporting to be the last will and testament of said David Vance, of Buncombe county, North Carolina, bearing date 28th August, 1811, which will contains a devise of said six hundred and twenty acres of land to Samuel Vance, the ancestor of the lessors of the plaintiff.
The defendants produced and read, the copy of a deed from George Hargroves and others to James Erwin, dated 8th September, 1818; which includes, among other real property, said tract of six hundred and twenty acres; said deed was executed by Andrew Erwin, as attorney in fact of said Har-groves and others ; next, a deed from James Erwin to Andrew Erwin, for the same tract of land, dated 10th September, 1818; also a deed of mortgage from said Andrew Erwin to Nicholas G. Ridgley, of the city of Baltimore, covering said tract of land, dated 1st May, 1821, which does not appear to have been either redeemed or foreclosed. Defendants also read a power of attorney from said N. G. Ridgley, to William Gilchrist, of Bedford county, Tennessee, dated 5th March, *315 1822, empowering him to sell, rent, or dispose of said tract of land, as he may think proper and expedient.
In each of said papers, introduced by the defendants, a conveyance of said tract of land, from Samuel Vance to Andrew Erwin, is recited; but no such conveyance has been pi'oduced, or accounted for; the date of said conveyance from Vance,, according to the recital, is 10th October, 1815. There is much testimony in the record in respect to the possession of said tract of land. It does not appear that, on the.part of thelessors of the plaintiff, or those under whom they derive title, there was any actual possession of said- tract of land after the year 1816, about which time, it seems, their ancestor, Samuel Vance, removed from Lincoln county. On the-other hand, the weight of testimony tends to establish, and, we think, well warranted the jury in the conclusion, that from about the year 1817, there was a continued adverse occupation and possession of said land.under the title set up by the defendants. This will sufficiently appear by reference to' the testimony of some two or three of the witnesses set forth in the record, without stopping to notice other cumulative evidence upon this point. Joel Pinson states, in substance, that after Vance removed from Lincoln county, and. as- early as 1815 or 1816, the land in dispute was called Erwin’s land ; and it was so called until 1821 or 1822; and he thinks it was rented as Erwin’s land during all that time; and he was recognized as the owner by the tenants in possession. He can not say positively that his possession was continuous; the whole of that time, but he thinks it was so; and it was certainly adverse to, or in the absence of any claim on the part of Vance. He further states,.that he feels confident the land was- cultivated,- some portion of it every year, and that possession was held continuously, as the land of Erwin or Ridg-ley, from the year 1822, until the time witness removed from this State, which was in 1834 ; and he thinks that from the *316 time Vance left Lincoln county, up to the period when witness removed from the State, there was a continued adverse possession of said land; and that soon after the year 1822, it was known as Ridgley’s land.
Thomas H. Williams proves, that he removed with his father, Oliver Williams, to Lincoln county in 1816; that he heard a conversation between his father and Samuel Vance during the first year, he thinks, after his father’s removal to Lincoln county. In that conversation, Samuel Vance spoke of the tract of land in dispute, as Erwin’s land ; and witness is confident that Vance did not claim it. Witness further proved, that William Gilchrist, agent of Ridgley, appointed Oliver Williams, the father of witness, an agent to rent said land; and that his father accordingly, for several years rented said land in the name and for the benefit of Ridgley, and received the rents for him, paid the taxes, <fec.
Daniel Whitaker proved, that in the year 1842, William Gilchrist empowered him to rent said land, and prevent waste thereon; and that under that authority he continued to act in renting the land, paying taxes, (fee., in the name of Ridley, until shortly before the commencement of this suit, which was on the 22d June, 1849.
The proof shows, that Nicholas G. Ridgley died in December, 1829 ; and that William Gilchrist died in 1833 or 1834.
The jury, under the instructions of the circuit judge — in which we perceive no error to the prejudice of the lessors of the plaintiff — found a verdict in favor of the defendants ; and the court refused to grant a new trial; whereupon the lessors appealed in error to this court.
It might suffice, for the decision of this case, to refer to the settled rule of this court, that in civil cases, where the facts have been fairly submitted to the determination of the jury, under instructions from the court unexceptionable in point of law, a new trial will not be granted here, although, in the *317 opinion of this court, the verdict may be against the weight of evidence.
But it has been earnestly pressed in argument, by the counsel for the plaintiffs, that the verdict is not warranted by the evidence; and that it is also against the law of the case.
1. It is argued, that the title under which the defendant’s claim is upon its face, fraudulent in law; and therefore, is not such an “assurance,” as is contemplated by the first section of the act of 1819. The assumption that the defendant’s title, in its inception, is fraudulent, by construction of law, is not well founded. But were the fact even so, we hold it to be clear 5 that a deed “purporting to convey an estate in fee simple,” though fraudulent either in law, or in fact, is such an assurance of title, as coupled with seven years uninterrupted adverse possession, under and by virtue thereof, will vest in the possessor an indefeasible title to the land therein described. Such fraudulent deed, though void as to creditors of the vendor, is valid and binding between the parties, and as against all other persons than creditors of the vendor, conveys an estate in fee simple to the vendee. As said by this court, in the case of Love’s lessee vs. Shields (3d Yerger 405,) there is no saving in the statute in favor of the true owner’s right against a possession under such a deed ; and the courts cannot add an exception to the statute. In that case the possession was held under a Sheriff’s deed, founded on a void tax sale, known to the possessor to be void. See also Meigs Reports 224, where the possession was under a deed founded on a void or voidable decree.
2d. It is insisted, that Gilchrist, the agent or attorney in fact of Ridley, had no power to make a sub-agent, and that the acts and agreements of such sub-agent were •wholly void, and could not, therefore, have the effect to create the relation of landlord and tenant, between Ridgley and the persons entering under such void contracts; and consequently their pos *318 session cannot be regarded as his possession, or enure to his benefit for any purpose.
It is true, as an abstract proposition, that an agent appointed for a special purpose, to which his authority is restricted, cannot delegate his authority, or appoint a sub-agent in his stead, without the sanction of his principal. But if it were conceded that this principle applies to the particular case under consideration, the consequence deduced by no means follows. The only inquiry of any importance, for the present purpose, is, did the persons in possession, in point of fact, enter and hold under the title of Ridgley,' and acknowledge him as their landlord, so as in law to establish, between him and them, the relation of landlord and tenants? If so, how that relation was constituted, is unimportant. Suppose Williams and Whitaker, the sub-agents in this case, under an insufficient authority, or even without the color of authority, voluntarily assumed to act for Ridgley in renting the land ; and did in fact rent or lease portions of it, to persons who entered upon and held possession thereof as Ridgley’s, and under his title alone, recognizing him as landlord, and paying rent accordingly — -it was at the option of Ridgley to adopt, or repudiate, the acts of Williams and Whitaker. A subsequent ratification on his part would be equivalent in all respects to a previous authority, and would be operative, for all purposes, to constitute the conventional relation of landlord and tenant between him and the persons so entering- and holding possession; and to confer upon him and them, respectively, all the rights appertaining to such relation. And the proof in this case, we think, fully warrants the presumption of such subsequent adoption and ratification of the acts of the sub-agents.
3d. It has been contended, that if the tenants in possession at the death of N. G. Ridgley — assuming that they stood in the relation of tenants to him — held over after the expiration *319 of their leases or terms, that such holding over being wrongful, they are to be regarded as mere trespassers, and their possession, under such circumstances, would not be the possession of Ridgley’s heirs. It is clear, that if the landlord die before the expiration of the term for which the land was leased, the tenant thereupon becomes the tenant of the heir to whom the land descends; and the relation between the tenant and the heir, in such case, will be in all respects the same as previously existed between the tenant and the ancestor. The contract of lease will be no less obligatory, as between the tenant and the heir, than between the original parties ; and the tenant can no more controvert the title of ' the heir, than he could that of the ancestor. When the lease expires in such case, should the tenant hold over, the heir has the right to treat him either as a wrongdoer, or as a tenant. If the tenant is permitted to hold over by consent of the heir, either express or implied, it is held to be evidence of a new contract, without any definite period; and is construed to be a tenancy from year to year; and, of course, a continuation of the pre-existing relation, until put an end to by one or other of the parties.
4th. It is further argued, that admitting the power of attorney to Gilchrist to have authorized him to appoint a sub-agent, the death of Ridgley, the principal, in 1829, put an end to that authority ; and consequently the appointment of Whitaker, by Gilchrist, in 1832, was a nullity, and the acts of the former utterly void. It is certainly true, that in the case of a mere naked power, the death of the principal is an absolute revocation of the authority of the agent. But notwithstanding, the acts of Whitaker, for this reason, may have had no binding force or effect as against the heirs of Ridgley, still, as we have seen, it was competent to them, by their subsequent adoption and ratification of the contracts or leases made by *320 him, to give validity and effect to them, as from the proof in this case the jury may well suppose them to have done.
Other questions were raised which we do not consider it necessary to discuss. Neither do we deem it proper, from the view we have taken of the case, to notice the objections, urged on behalf of the defendants, to the deed of partition and copy of the will introduced by the lessors of the plaintiff.
The judgment will be affirmed.